UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ANTHONY ELLISON,

Defendant.

23 Civ. 10080 (PAE)
18 Cr. 834-9 (PAE)

OPINION AND ORDER

---

PAUL A. ENGELMAYER, District Judge:

This order resolves a *pro se* motion by defendant Anthony Ellison pursuant to 28 U.S.C.

§ 2255, claiming ineffective assistance of counsel.  Dkt. 680 ("Mot.").[1]  For the reasons that

follow, the Court denies the motion, without the need for an evidentiary hearing.

## I.      Background[2]

### A.   Ellison's Trial, Conviction, and Appeal

On October 3, 2019, after a three-week jury trial, Ellison was convicted of three offenses.

The first charged him with participating in a racketeering conspiracy, in violation of 18 U.S.C.

§ 1962(d).  This count (Count One) was based on evidence that Ellison was not only a member,

but a leader—and for an extended period—of a violent gang, Nine Trey Gangsta Bloods ("Nine

Trey"), members of which also sold illegal narcotics.  *See* Dkt. 582 ("Sent. Tr.") at 58–59; *see*

*also* 10/26/23 Dec'n at 2.  As the Court summarized at sentencing, the evidence showed that

---

[1] Docket citations in this decision are to the docket in 18 Cr. 834-9 (PAE).

[2] The abbreviated history of Ellison's case that follows draws heavily, and in parts verbatim, on
the earlier decisions denying Ellison's (1) post-trial motions, *see* Dkt. 407 ("1/10/20 Dec'n");
(2) application for release on bail in light of the COVID-19 pandemic, *see* Dkt. 479 (4/27/20
Dec'n"); (3) first motion for compassionate release, *see* Dkt. 602 ("7/7/21 Dec'n"); and (4)
second motion for compassionate release, *see* Dkt. 679 ("10/26/23 Dec'n").

Nine Trey's members participated in shootings, robberies, and severe violence that inspired fear across New York City.  Sent. Tr. 59.

The second count charged Ellison with a violent crime, kidnapping in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(1).  This count (Count Two) was based on evidence that, in July 2018, Ellison and an accomplice carried out the armed kidnapping and robbery of the rapper Daniel Hernandez, a/k/a "Tekashi 6ix 9ine," an associate of Nine Trey who had fallen out of favor with Ellison.  Sent. Tr. 65.

The third count (Count Five) charged Ellison with a separate violent crime—maiming and assault with a dangerous weapon—in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1959(a)(2).  This count was based on evidence that, in October 2018, Ellison had viciously slashed open the face of Mark Hobdy, a blameless person who had not done anything to affront Ellison, but was attacked purely based on his association with a person whom Ellison believed had been responsible for the shooting of an ally.  Sent. Tr. 61.

On January 10, 2020, in an 18-page decision, the Court denied the post-trial motions, under Federal Rules of Civil Procedure 29 and 33, of Ellison and his trial co-defendant, Aljermiah Mack.  *See* Dkt. 407.

On November 4, 2020, the Court sentenced Ellison to 288 months'—or 24 years'—imprisonment, followed by five years' supervised release.  This sentence was below the advisory Guidelines range of 360 months to life.  *See* Sent. Tr. 86.

On November 13, 2020, Ellison appealed his judgment of conviction.  Dkt. 577.  On September 23, 2022, the Second Circuit affirmed the conviction; on October 17, 2022, the Circuit's mandate issued.  Dkt. 657.

2

## B. Ellison's Compassionate Release Motions

On May 10, 2021, while Ellison's appeal was pending, the Court received his first *pro se* motion for compassionate release, seeking release from United States Penitentiary ("USP") Canaan pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk the COVID-19 pandemic presented to his health. *See* Dkts. 596, 598. At the Court's direction, appointed counsel for Ellison filed a memorandum in support of that motion. Dkts. 597–98. The Government opposed the motion. *See* Dkt. 599.

On July 7, 2021, the Court denied Ellison's motion. Dkt. 602. The Court found, first, that Ellison had not established circumstances qualifying as extraordinary and compelling. Although Ellison had largely relied on the pandemic as a basis for relief, the Court noted that he had refused to accept the COVID-19 vaccine, and that the pandemic had waned, with USP Canaan reporting no active cases among inmates. *Id.* at 6. And to the extent that earlier prison conditions during the pandemic had been parlous, the Court had explicitly taken these into account during Ellison's sentencing. *Id.* at 7–8. Moreover, the Court noted, although Ellison's asthma diagnosis gave him a degree of heightened vulnerability to COVID-19, "his physical and medical condition is far closer to the mine-run of inmates than to those who, on account of significantly heightened vulnerability to COVID-19, have secured release" under § 3582(c). *Id.* at 8–9 (citations omitted).

In any event, the Court held, even if Ellison had shown extraordinary and compelling circumstances, his release would be incompatible with the 18 U.S.C. § 3553(a) factors on which the Court had based his sentence. Ellison had served barely 10 percent of the 24-year sentence that the Court had found minimally necessary with respect to these factors. *Id.* at 9. Reviewing its remarks at sentencing, the Court noted that this sentence had principally been necessary to

3

achieve just punishment, "given the viciousness of Ellison's crimes." *Id.* at 10. These included

leading the violent Nine Trey gang; the "cruel and bloodthirsty act" of slashing from ear to jaw

the face of the innocent Hobdy to send a message to others; and kidnapping Nine Trey affiliate

Hernandez by ramming his vehicle, drawing a gun, and threatening to shoot him and his driver,

with the goal of stealing jewelry and punishing Hernandez for disrespecting Ellison. *Id.* And,

the Court held, other § 3553(a) factors, including the need to protect the public and deter Ellison

from further violent crimes—strongly favored the sentence imposed. *Id.* at 10. In sum, the

Court held, Ellison's application for release was "wholly incompatible with the Court's judgment

that no sentence below 24 years in prison would be reasonable for him in light of the assembled

§ 3553(a) factors." *Id.* at 11.

On April 14, 2023, Ellison, *pro se*, filed a new motion for compassionate release,

pursuant to § 3582(c)(1)(A). Dkt. 670. It sought Ellison's release from the Metropolitan

Detention Center ("MDC"), where Ellison has been transferred pending trial on charges

including that of conspiracy to commit honest services wire fraud, and to provide contraband to

other inmates, on which trial was scheduled to commence on November 13, 2023. *See United*

*States v. Anthony Ellison*, No. 21 Cr. 673 (ALC) (S.D.N.Y.).

Ellison's new motion argued that there were three extraordinary and compelling reasons

warranting his release: that (1) information allegedly from Hobdy purportedly established that

Ellison had not committed the slashing assault that was the subject of Count Five;

(2) Hernandez's "wrongful conduct" had provoked the kidnapping that was the subject of Count

Two; and (3) Ellison had shown extraordinary acceptance of responsibility in foregoing "an

undeniable defense," based on lack of venue, to the offenses charged in Counts Two and Five,

4

Dkt. 670.  On May 1, 2023, the Government filed its opposition.  Dkt. 673.  On May 3, 2023,

Ellison filed a *pro se* reply.  Dkt. 674.

On October 26, 2023, the Court denied Ellison's motion.  Dkt. 679.  The Court again

found that Ellison had not established circumstances qualifying as extraordinary and compelling.

The Court rejected Ellison's claim to have adduced evidence calling into question his conviction

for the slashing charged in Count Five, because it was based on an unauthenticated document

contained in the letter of a private investigator accused of witness tampering and evidentiary

fabrication, and because the evidence supporting that conviction was overwhelming.  *Id.* at 7–8.

The Court rejected as frivolous, and inconsistent with overwhelming and varied evidence,

Ellison's renewed attempt to impeach Hernandez's testimony.  *Id.* at 8–10.  Finally, the Court

rejected Ellison's claim to have accepted responsibility by foregoing a venue challenge, both

because the evidence supported venue, and because Ellison had not, in any respect, accepted

responsibility for his criminal conduct.  *Id.* at 10.  In any event, the Court held, Ellison's

compassionate release motion failed, because the sentence imposed was the lowest compatible

with the § 3553(a) factors, viewed in combination.  *Id.* at 10–12.

### C.  Ellison's § 2255 Motion

On November 15, 2023, Ellison, *pro se*, filed the instant motion under § 2255.  Ellison

argues that his counsel were ineffective, in that (1) his trial and appellate counsel had failed to

argue, in connection with the Count Two kidnapping count, that Hernandez had not been

"abducted" within the meaning of New York Penal Law ("NYPL"), Mot. at 6–9; (2) his trial

counsel failed to seek a downward departure at sentencing based on the ostensible "wrongful

conduct" of Hernandez that allegedly provoked Ellison to kidnap him, *id.* at 10–12; and (3) his

5

trial counsel failed to challenge venue on Counts Two and Five, *id.* at 12–13.  On January 16,

2024, the Government filed an opposition.  Dkt. 682 ("Gov't Mem.").

## II.    Discussion

### A.  Applicable Legal Standards

Section 2255 enables a prisoner who was sentenced by a federal court to petition that

court to vacate, set aside, or correct the sentence because "the sentence was imposed in violation

of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."

28 U.S.C. § 2255(a).  Relief under § 2255 is generally available "only for a constitutional error, a

lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a

fundamental defect which inherently results in a complete miscarriage of justice.'" *United States*

*v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"Because collateral challenges are in tension with society's strong interest in the finality of

criminal convictions, the courts have established rules that make it more difficult for a defendant

to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*, 615 F.3d

50, 53 (2d Cir. 2010) (citation omitted).

A claim of ineffective assistance of counsel, however, is a permissible basis for bringing

a § 2255 petition.  The Sixth Amendment affords a defendant in criminal proceedings the right

"to effective assistance from his attorney at all critical stages in the proceedings." *Gonzalez v.*

*United States*, 722 F.3d 118, 130 (2d Cir. 2013).  A defendant claiming ineffective assistance

must establish that (1) his "counsel's performance was deficient" and (2) "the deficient

performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As for *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of

the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use

hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). A court is to start from the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. That is because there are many different ways to provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689–90; *see also id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

As for *Strickland*'s second prong, proving prejudice requires a defendant to show that but for counsel's errors, there was a reasonable probability that the outcome would have been different—a "probability sufficient to undermine confidence in the outcome." *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). This requires the court to examine "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). Thus, for a § 2255 petition to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

## B. Application

Measured against these familiar standards, Ellison's claim of ineffective assistance of counsel is easily put aside based on the trial record, with no need or basis for an evidentiary

hearing. Ellison's three challenges each fault counsel for not pursuing an argument that the Court—in addressing Ellison's earlier bids for relief, including under § 3582(c)—has previously found meritless. The Court reviews these in turn.

### 1. Insufficient Evidence of Kidnapping

Ellison's first argument relates to Count Two, which charged him with participating in a kidnapping in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). He argues that the kidnapping victim, Hernandez, was not "kidnapped" within the meaning of the section of the NYPL, Section 135.20, on which Count Two was based. He argues that his trial and appellate counsel provided ineffective assistance in not specifically challenging his conviction on this ground. Mot. at 6–9.

That is wrong. Ellison does not dispute that the Court properly instructed the jury as to the elements of kidnapping under NYPL § 135.20. Those instructions explained, in pertinent part, that "[t]o abduct a person means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force." *See* Trial Transcript ("Tr.") at 1762. Ellison instead argues, factually, that Hernandez was not abducted because he ostensibly "agreed" to accompany his assailants and because any use of deadly force against Hernandez related only to Ellison's robbery of him, not the substantially contemporaneous kidnapping. Mot. at 8.

For the reasons the Government sets out, and which the Court incorporates by reference here, the evidence at trial overwhelmingly supported the jury's conviction of Ellison on Count Two. *See* Gov't Mem. at 4–5. It supported that Hernandez had been forced out of his car at night, assaulted, seized, and forced against his will into Ellison's car, and that Ellison and a confederate brandished firearms in the course of kidnapping Hernandez. This evidence included

8

the powerful testimony of Hernandez himself and of his driver Jorge Rivera, who was a firsthand witness to these events; testimony of police officers who responded to the scene; and surveillance audio and video footage. The Court has previously so recognized, in rejecting the post-trial motion by Ellison's trial counsel for a judgment of acquittal under Rule 29, which challenged, *inter alia*, the sufficiency of the evidence of the Count Two kidnapping. *See* Dkt. 407 at 14–16. The Court also recognized the sufficiency of this evidence of Hernandez's kidnapping in rejecting Ellison's second motion for compassionate release, which was based in part on an attempt to discredit Hernandez. *See* 1/10/20 Dec'n at 8–10.

Under these circumstances, Ellison's trial and appellate counsel could not be found ineffective under *Strickland* for failing to challenge the sufficiency of the evidence on Count Two. The evidence was easily sufficient; trial counsel did—unsuccessfully—make a claim of insufficiency following trial; and any failure to make such an argument could not have prejudiced Ellison because the argument was baseless. *See, e.g.*, *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance." (citing *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992), *cert. denied*, 507 U.S. 998 (1993)); *Guzman v. United States*, 363 F. Supp. 3d 396, 399 (S.D.N.Y. 2019) (ineffective assistance claim based on counsel's failure to raise legal challenge clearly refuted by the record must fail).

### 2. Failure to Cite Hernandez's Wrongful Conduct at Sentencing

Ellison next argues that his trial counsel rendered ineffective assistance at sentencing by failing to seek a downward departure based on an act by Hernandez during the racketeering conspiracy. Mot. at 10–12. Ellison states that on or about July 18, 2018, Hernandez "directed and sanctioned an act of violence that . . . resulted in a woman being shot in her foot in

9

Brooklyn" and that this conduct "prompted the [intra-gang] dispute that resulted in the incident on July 22, 2018," to wit, Ellison's kidnapping, assault, and robbery of Hernandez.  He argues that his trial counsel failed him in not pursuing a downward departure at sentencing under U.S.S.G. § 5K2.10, which provides for a downward departure where a victim's conduct significantly provoked the offense behavior.  *Id.* at 10.

This argument, which in part reprises an argument in Ellison's second compassionate release motion, fails.  The Court again incorporates by reference the arguments ably canvassed by the Government.  *See* Gov't Mem. at 5–8.  In brief, Ellison's apparent factual premises relating to the July 18, 2018 incident—in which a Nine Trey member fired a gunshot that hit a female bystander—are faulty.  The trial evidence did not place Hernandez at the scene of this incident, it did not associate Ellison with that incident, and it did not support that Ellison's later kidnapping of Hernandez had its origins in this incident.  *Id.* at 6.

And the narrow downward departure ground identified in § 5K2.10 has no application to the circumstances here.  That ground is available where "a victim's wrongful conduct contributed significantly to provoking the offense behavior," *e.g.*, in situations in which a victim's violent provocative behavior, typically towards the defendant, although short of enabling a self-defense justification, supplied context for the defendant's ensuing criminal conduct.  *See, e.g., Pak v. United States*, 278 F. Supp. 2d 263, 269–70 (D. Conn. 2003).  That paradigm does not apply here.  There had not been any violence by Hernandez towards Ellison in the period preceding the kidnapping; at most, the July 18 episode entailed violence by gang associates of Hernandez towards other gang members.  And the evidence at trial did not support at all that Ellison's kidnapping of Hernandez was a response to violence by Hernandez.

Ellison's claim of ineffective assistance based on § 5K2.10 therefore fails. A downward departure on that ground was unavailable as a matter of law, given the factual record. And had counsel made such an argument, the Court would have declined to depart, both for lack of legal authority and, even assuming such authority, in its discretion. The 288-month sentence imposed, materially below the Guideline range of 360 months to life, reflected the Court's careful assessment of the § 3553(a) factors applicable to Ellison and his defense. Counsel's invocation of § 5K2.10 would not have disturbed this assessment. Thus, Ellison fails to show either that counsel was deficient in failing to make this argument or that not doing so prejudiced Ellison at sentencing. *See, e.g.*, *Pak*, 278 F. Supp. 2d at 269–70 (attorney's failure to make an argument regarding a downward departure that would not have been successful anyway did not support an ineffective assistance claim); *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 517 (S.D.N.Y. 2005) (same).

### 3.    Failure to Challenge Venue

Ellison, finally, faults his counsel for not challenging venue on Counts Two and Five. Mot. at 12–13. The Court addressed venue on these counts in its decision denying Ellison's second motion for compassionate release, in which he claimed entitlement to credit for accepting responsibility based on his decision not to contest venue during trial. 10/26/23 Dec'n at 10. In fact, the Court there explained, the evidence supported venue on both counts. *Id.* (factual and legal citations omitted).

Under these circumstances, any venue challenge would fail as a matter of law. Such a claim therefore cannot form the basis of a viable claim of ineffective assistance of counsel. *See, e.g., Kirsh*, 54 F.3d at 1071.

11

**CONCLUSION**

For the reasons above, the Court denies Ellison's motion under 28 U.S.C. § 2255.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket 680 of case No. 18 Cr. 834-9 and to close case No. 23 Civ. 10080.


SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 2, 2024
       New York, New York